UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| WILLIE JACKSON, JR., | CASE NO.  1:24-CV-633 |
| Plaintiff, | JUDGE BRIDGET MEEHAN BRENNAN |
| v. | |
| COLONIAL PENN LIFE INS. CO., *et al.*, | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | |

Plaintiff Willie Jackson Jr.'s ("Jackson") moved this Court for an order remanding this action to the Lorain County Court of Common Pleas.  (Doc. 6.)  Defendant Colonial Penn Life Insurance Company ("Colonial Penn") timely responded in opposition.  (Doc. 11.)  For the reasons that follow, Plaintiff's motion is DENIED, and Defendant GenFed Financial Credit Union ("GenFed") is DISMISSED from this action as having been fraudulently joined.

I.  BACKGROUND

A.  Complaint Allegations

Jackson was an owner and beneficiary of a life insurance policy [] issued by Colonial Penn (the "Policy").  (Doc. 1-1 at 12, ¶ 1.)[1]  His father, Willie Jackson, Sr., and mother, Priscilla Davis, were "co-equal owners of this life insurance policy [] and all contractual rights and benefits of said policy."  (*Id.* at 13, ¶ 3.)  Upon the death of his parents, Jackson became the "sole

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

surviving owner and beneficiary of the policy and its proceeds and benefits." (*Id.*) The proceeds of the Policy totaled $42,821.95. (*Id.* ¶ 4.)

According to Jackson, Colonial Penn did not seek out the surviving beneficiaries and owners of the Policy. Instead, Colonial Penn surrendered the Policy funds to the Ohio Department of Commerce, Division of Unclaimed Funds. (*Id.* ¶ 5.) Plaintiff has alleged breach of contract, insurance bad faith, and breach of those duties owing to policy beneficiaries. (*Id.* at 13–14, ¶¶ 6–7.)

Mark Hard ("Hard") of MBH Resource Group uncovered where the Policy funds were deposited. Hard also negotiated a proposal allowing Plaintiff to mitigate damages. (*Id.* at 17, ¶¶ 21, 24.) To Plaintiff, Hard is owed $4,282.20. (*Id.* ¶ 22.) The Policy funds were ultimately deposited with GenFed. Upon learning of Willie Jackson, Sr.'s death, GenFed froze the account and, in turn, the $42,821.95 on deposit. (*Id.* at 18, ¶ 28.)

On March 5, 2024, Plaintiff filed a complaint in the Court of Common Pleas of Lorain County, Ohio. (*See* Doc. 1-1.) Colonial Penn was identified as a citizen of Pennsylvania, Hard as a citizen of Oklahoma, and GenFed as a citizen of Ohio. (*See id.* at 19; Doc. 1 at 4, ¶ 17.) Count One stated a breach of contract and insurance bad faith claim against Colonial Penn. (Doc. 1-1, at 16, ¶¶ 13, 14.) Count Two sought to "have defendant GenFed [] deposit all funds it has frozen to the Clerk with a request that the Court determine whom these funds belong (interplead the funds so that title to the funds may be established by the Court)." (*Id.* at 18, ¶ 29.) In relief, Plaintiff pleaded for "compensatory damages in excess of $47,104.15, punitive damages in excess of $25,000, all attorney's fees and litigation costs, and [] such other and further relief as this court and/or Jury deems proper." (*Id.* at 18.)

B.     **Procedural History**

Colonial Penn removed this action from the Lorain County Court of Common Pleas on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1 at 1.) In its notice of removal, Colonial Penn asserted GenFed and Hard were improperly or fraudulently joined. (*Id.* at 2, ¶ 3.) On April 9, 2024, Plaintiff moved for a remand order and argued three distinct points: (1) the amount in controversy does not exceed $75,000; (2) complete diversity does not exist; and (3) removal was untimely. (Doc. 6.) On May 8, 2024, Colonial Penn opposed Plaintiff's motion. (Doc. 11.)

II.    **ANALYSIS**

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court . . . where such action is pending." Removal statutes are strictly construed and all doubts are resolved in favor of remand. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

The stated basis for removal here is diversity jurisdiction. A district court has original jurisdiction over such matters if the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. 28 U.S.C. § 1332. The removing party has the burden of establishing that federal jurisdiction exists. *Vill. of Oakwood v. State Bank & Tr. Co.*, 529 F.3d 373, 377 (6th Cir. 2008).

A.     **Amount in Controversy**

Generally, the amount in controversy is determined by what a plaintiff pleaded in the complaint. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993). Where a plaintiff has not pleaded a specified amount, however, the burden rests with the defendant to demonstrate this

jurisdictional requirement by a preponderance of the evidence.  *Meier v. Coresource, Inc.*, No. 98-5364, 173 F.3d 429 (Table), 1999 WL 133255, at *1, 1999 U.S. App. LEXIS 3086, at *4 (6th Cir. Feb. 23, 1999) (quoting *Gafford*, 97 F.2d at 158); *see also Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010).  To meet this burden, defendants are not tasked with proving the amount in controversy to a legal certainty.  *Gafford*, 997 F.2d at 159.  Instead, a "fair reading" of the unspecified damages pleaded may satisfy the amount in controversy requirement.  *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 573 (6th Cir. 2001).

Plaintiff seeks "compensatory damages in excess of $47,104.15, punitive damages in excess of $25,000, all attorney's fees and litigation costs[.]"  (Doc. 1-1 at 18.)  Colonial Penn urges that Plaintiff's compensatory and punitive damages, "an award of attorneys' fees or 'excess' compensatory or punitive damages of just $2,895.86 [] push the amount in controversy beyond the $75,000 threshold."  (Doc. 1 at 7.)

"Absent a specification in the complaint as to the amount of punitive damages sought, the defendant seeking to remove a case must prove facts sufficient to support federal jurisdiction."  *Bower v. Am. Cas. Co. of Reading, Pa.*, No. 99-4102, 2001 U.S. App. LEXIS 18053, at *8–9 (6th Cir. Aug. 6, 2001).  The Court must consider punitive damages as part of the amount in controversy "unless it is apparent to a legal certainty that such damages cannot be recovered."  *Hayes*, 266 F.3d at 572.

Count One pleads breach of contract and insurance bad faith.  (Doc. 1-1.)  "Because the sole purpose of contract damages is to compensate the nonbreaching party for losses suffered as a result of a breach, '[p]unitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.'"  *Lake

*Ridge Acad. v. Carney*, 613 N.E. 2d 183, 187 (Ohio 1993) (quoting 3 Restatement of the Law 2d, Contracts (1981) 154, Section 355). As pleaded, the Complaint seeks punitive damages that may, in fact, be recoverable. *See Holton v. Erie Ins. Co.*, No. 1:24-cv-1428, 2024 WL 4476106, at *2, 2024 U.S. Dist. LEXIS 185750, at *6 (N.D. Ohio Oct. 11, 2024) ("At removal, the Court finds that Plaintiff pleads in Count 2 a claim for insurance bad faith, on which punitive damages might plausibly be available."). Punitive damages may be considered in the Court's amount in controversy assessment.

The Court need not determine the precise amount of punitive damages being sought when assessing the amount in controversy. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). But this Court, like others, will assume a one-to-one ratio with the compensatory damages stated in the Complaint. *See Holton*, 2024 WL 4476106, at *2, 2024 U.S. Dist. LEXIS 185750, at *6 (assuming a one-to-one ratio of damages for an insurance bad faith claim for purposes of remand); *see also Wright v. State Farm Mut. Auto. Ins. Co.*, No. 3:21-cv-563, 2022 WL 834302, at *4, 2022 U.S. Dist. LEXIS 49528, at *9 (W.D. Ky. Mar. 21, 2022) (finding amount in controversy requirement was met "[e]ven if the Court assumed a much more modest compensatory-to punitive ratio of one-to-one" for bad faith insurance settlement claim). This combined total of $94,208.40 exceeds the threshold limit of $75,000. (*See* Doc. 1-1 at 18.)

**B. Complete Diversity**

Plaintiff is an Ohio citizen. (Doc. 1 at 4, ¶ 16 ; Doc. 1-1 at 12.) Colonial Penn is a citizen of Pennsylvania. (Doc. 1 at 4, ¶ 17.) Hard is a citizen of Oklahoma. (*Id.* ¶ 18.) And GenFed is a citizen of Ohio. (*Id.*)

On the face of the complaint, complete diversity does not exist because GenFed and Plaintiff are citizens of the same state. But Colonial Penn asserts GenFed was improperly

joined.[2]  (*Id.* at 5, ¶ 21.)  Colonial Penn argues "the only allegations against GenFed are that it accepted for deposit a check into Jackson, Sr.'s account and then 'froze' the account."  (*Id.*)  The only stated claim against GenFed is for interpleader.  (*Id.*)  Colonial Penn asserts that because GenFed is not a person having claims against Plaintiff, Plaintiff cannot use interpleader to join GenFed in this action.  (*Id.* (citing Ohio Civ.R. 22).)

Fraudulent joinder of a non-diverse defendant does not defeat diversity jurisdiction. *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).  A defendant is fraudulently joined when "there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law[.]"  *Id.; Walker v. Phillip Morris USA Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011).  The removing party bears the burden of demonstrating that no colorable claim was pleaded.  *See Kent State Univ. Bd. of Tr. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013).  This burden is a heavy one and all ambiguities must be resolved in favor of remand.  *Id.* ("A defendant attempting to prove fraudulent joinder . . . faces a particularly heavy burden.").

To determine whether GenFed was improperly joined, the Court looks to whether Plaintiff alleged any plausible cause of action against the non-diverse entity.  *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).  In conducting this inquiry, the Sixth Circuit explained district courts should "apply a test similar to, but more lenient than, the analysis applicable to Rule 12(b)(6) motion to dismiss."  *Id.*  As with a Rule 12(b)(6) motion, the Court must accept as true all well-pleaded allegations, *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d

---

[2] Colonial Penn further asserts that Hard, a diverse defendant, was fraudulently joined because Plaintiff failed to state a claim against him.  The Court's authority to dismiss a fraudulently joined party is legally distinct from its authority to dismiss a party because no claim has been stated against them.

1003, 1005 (6th Cir. 2009), but need not accept mere legal conclusions.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Interpleader is "an equitable proceeding that affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding."  *United States v. High Tech. Prods., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007) (quoting 7 Wright, Miller & Kayne, Federal Practice and Procedure, § 1704 (3d ed. 2001)).  The Sixth Circuit described the typical interpleader case this way:

> a party owes money but doesn't know whom to pay.  So it sues the potential claimants—all parties who might have a legitimate claim against it for the money.  The real contest is between the claimants; the interpleader plaintiff usually doesn't care who wins.  To that end, the court will often order the plaintiff to deposit the disputed funds with the court and dismiss it from the case entirely.  Then the court sorts out the various claims to the money and distributes the funds

*United of Omaha Life Ins. Co. v. Kay*, 884 Fed. App'x 863, 864 (6th Cir. 2021); *see also Heitsch v. JP Morgan Chase Bank, N.A.*, No. 24-10443, 2024 WL 4649255, at *7, 2024 U.S. Dist. LEXIS 215015, at *21–22 (E.D. Mich. Sept. 23, 2024) (describing typical rule interpleader cases as: "the party holding funds or property to be dispersed to beneficiaries files an interpleader action naming all possible beneficiaries when it is unclear who are proper beneficiaries.  Those beneficiaries then litigate the case between them, and the Court or jury decides which beneficiaries are entitled to the funds or property").

There are two mechanisms for interpleader in federal court: "rule interpleader" and "statutory interpleader."  Rule interpleader is brought pursuant to Federal Rule of Civil Procedure 22, which "provides that persons having claims against the plaintiff may be joined as defendants and required to interplead their claims when their claims may subject plaintiff to multiple liability."  *Sun Life Assur. Co. of Canada v. Thomas*, 735 F.Supp. 730, 732 (W.D. Mich.

1990) (citing Fed. R. Civ. P. 22(a)(1).). Statutory interpleader is brought under the Federal Interpleader Act. 28 U.S.C. § 1335. At bottom, the party invoking statutory interpleader must have the disputed money or property in its "custody or possession." 28 U.S.C. § 1335(a).

The complaint's allegations do not satisfy the requirements of either rule or statutory interpleader. Rule 22(a)(1) expressly provides: "Persons with claims that may expose a *plaintiff* to double or multiple liability may be joined as defendants and required to interplead." (emphasis added). Jackson is not so exposed. He has expressly *asserted* beneficiary rights under the Policy, not that he is subject to lawsuits from others. As for statutory interpleader, no allegation states—let alone creates a reasonable inference—the Policy funds are in his "custody or possession." 28 U.S.C. § 1335(a). Instead, as pleaded, Jackson has attempted to recover funds held by another. Jackson's complaint deficiencies do not state a plausible claim for interpleader against GenFed.[3] Thus, Colonial Penn has met its heavy burden of demonstrating GenFed was fraudulently joined.

"When parties are fraudulently joined, they are dismissed from the lawsuit." *Makoski v. Zimmer Holdings, Inc.*, 538 F.Supp.3d 757, 764 (N.D. Ohio 2021) (citing *West v. Visteon Corp.*, 367 F. Supp. 2d 1160, 1165 (N.D. Ohio 2005)). Thus, the non-diverse party's citizenship is not considered for purposes of determining diversity jurisdiction. *Coyne*, 183 F.3d at 493. Colonial Penn asserts that GenFed and diverse party Hard should both be dismissed. But Colonial Penn's assertion exceeds the Court's authority when ruling on fraudulent joinder, which is limited to dismissing the *non-diverse party*. *See e.g., id.* ("[T]his Court has recognized that fraudulent joinder of *non-diverse defendants* will not defeat removal on diversity grounds.") (emphasis

---

[3] Plaintiff's complaint seems to suggest the Court can compel the initiation of an interpleader action, but he cites no authority for this position. (*See* Doc. 6 at 55–56; Doc. 1-1 at 18.)

added); *Cline v. Dart Transit Co.*, 804 Fed. App'x 307, 310 (6th Cir. 2020) (same); *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F3d 904, 907 (6th Cir. 1999) ("When a *non-diverse party* has been joined as a defendant, then . . . the removing defendant may avoid remand only by demonstrating that the *non-diverse party* was fraudulently joined.") (emphasis added); *Oscar E Erickson, Inc. v. Nw. Nat'l Ins. Co. of Milwaukee, Wisc.*, No. 07-1859, 2007 WL 9810961, at *3, 2007 U.S. Dist. LEXIS 111071, at *11 (N.D. Cal. Nov. 26, 2007) ("[T]he concept of fraudulent joinder only applies to non-diverse parties."). Accordingly, GenFed is dismissed from this action as a fraudulently joined defendant.

### C. Waiver

Plaintiff's motion for a remand order challenges removal because, to Jackson, Colonial Penn waived its right of removal by electing to respond to requests for admissions before noticing removal. (Doc. 6 at 55.) Jackson attached Colonial Penn's responses to his requests for admissions and relevant correspondence. (*See id.* at 68–77.)

In response, Colonial Penn characterizes Plaintiff's written discovery as including "six 'gotcha' requests for admission" that "'essentially sought an admission of liability' from Colonial Penn, among other 'issue[s] of law to be determined at trial.'" (Doc. 11 at 101–02 (quoting *Young v. State*, 116 N.E.3d 781, 786 (Ohio Ct. App. 2018)).) Colonial Penn explains that the Ohio Rules of Civil Procedure allow 28 days to respond to requests for admissions otherwise the written requests are deemed admitted. (*Id.* at 102.) Colonial Penn's 30-day removal period was running at the same time. *See* 28 U.S.C. § 1446(b)(1). Out of an abundance of caution, Colonial Penn responded to the requests for admission and then noticed removal within the 30-day statutory period. (*Id.*)

"The right of removal of a suit from state court to federal court is a statutory right."

*Regis Assocs. v. Rank Hotels (Mgmt.) Ltd.*, 894 F.2d 193, 195 (6th Cir. 1990) (citing 28 U.S.C. § 1441).  "If the requirements of the removal statute are met, the right to removal is absolute."  *Id.*  At the same time, the right to removal can be waived if such a waiver is "clear and unequivocal."  *See id.*; *see also City of Cleveland v. Ameriquest Mortg. Secs. Inc.*, 615 F.3d 496, 501 (6th Cir. 2010) ("It is well-established that the waiver of a party's right to removal must be clear and unequivocal.").

The "critical factor in determining whether a particular defensive action in the state court should operate as a waiver of the right to remove is the defendant's intent on making the motion."  *Ellora's Cave Publ'g, Inc. v. Dear Author Media Network, LLC*, No. 5:14-cv-2331, 2015 WL 106062, at *2, 2015 U.S. Dist. LEXIS 1553, at *3 (N.D. Ohio Jan. 6, 2015) (quoting *Bolivar Sand Co., Inc. v. Allied Equip., Inc.*, 631 F.Supp. 171, 173 (W.D. Tenn. 1986)).  If a defendant seeks "only to preserve the *status quo ante* and not to dispose of the matter on its merits, it is clear that no waiver has occurred."  *Id.*  In contrast, if a defendant "seeks a disposition, in whole or in part, of the action on its merits, the defendant may not attempt to invoke the right to remove."  *Id.*

Colonial Penn did not seek to dispose of the case on the merits.  And Plaintiff does not assert that any dispositive motion was submitted.  Colonial Penn's sole action in the state court litigation was responding to requests for admissions.  Colonial Penn reasonably explained the basis for responding to the requests for admissions, namely to prevent the requests from being deemed admitted.  Colonial Penn acted to maintain the status quo.  Jackson's assertion that Colonial Penn waived its right of removal is without merit.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion (Doc. 6) is DENIED. GenFed Financial Credit Union is DISMISSED from this action as having been fraudulently joined.

**IT IS SO ORDERED.**

**Date:** March 5, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE